CLAY A. AND NANCY D. WORLEY, Petitioners v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Worley v. Commissioner
Docket No. 18711-87.
United States Tax Court
T.C. Memo 1989-225; 1989 Tax Ct. Memo LEXIS 225; 57 T.C.M. (CCH) 358; T.C.M. (RIA) 89225; May 10, 1989. Harold S. Levin, for the petitioners. Scott Anderson and John C. McDougal, for the respondent. CLAPP
MEMORANDUM FINDINGS OF FACT AND OPINION CLAPP, Judge: This case involves the determination of petitioners' liability for additions to income tax for fraud pursuant to sections 6653(b)(1) [1] and 6653(b)(2) in the following amounts for the following years: Addition to Tax
Year
sec. 6653(b)(1)
sec. 6653(b)(2)
1983
$ 1,474.41
$ 480.72
1984
2,056.03
399.08
$ 3,530.44
$ 879.80
*226 The sole issue for decision is whether or not petitioners' failures to report as taxable income amounts petitioner Clay A. Worley received from certain real estate appraisals on their 1983 and 1984 income tax returns were due to fraud. The year 1985 is not before the Court, but the exhibits and stipulation of facts refer to the 1985 year because it is part of the pattern of petitioners' failure to report income. FINDINGS OF FACT Some of the facts are stipulated and are so found. The stipulations and exhibits attached thereto are incorporated herein by this reference. Petitioners Clay A. Worley and Nancy D. Worley resided in Lynchburg, Virginia at the time of filing their petition. All references to petitioner will be to Clay A. Worley unless otherwise indicated. Petitioners timely filed their Form 1040 income tax returns for the tax years ending December 31, 1983, 1984, and 1985. Petitioners' Forms 1040 for the taxable years 1983, 1984, and 1985 were prepared by William W. *227 Townsend, a Certified Public Accountant. On November 19, 1986, petitioners filed a joint amended Form 1040X for the 1985 year. Petitioner Clay A. Worley has been real estate appraiser since 1983. He has a sixth grade education and prior to entering the real estate profession was employed in the military, at several local factories, and as a car salesman. In 1974, he passed his real estate exam but only began working as an appraiser in 1983. His first appraisal employment was for Robert G. Gentry & Associates, Inc. (Gentry & Associates) where he worked for 6 months for no salary in order to learn the appraisal business. In 1983 and until July 1984, he was employed by Gentry & Associates. From August 1984 through the end of the 1985 year, he was employed by Gary W. Case & Company (Case & Company). During the 1983, 1984, and 1985 years, he also performed real estate appraisals for Eames A. Powers, Jr., while Powers was on vacation or out of town. Finally, during these years, petitioner performed real estate appraisals and took photographs for Landbank Equity Corporation (LEC) and Richmond Equity Corporation (REC), which are sister corporations. Petitioner charged $ 30 per photograph *228 and kept the entire fee. For appraising real estate for LEC and REC, petitioner charged $ 125 or $ 145 per appraisal. Petitioner split the appraisal fees with his employers. Petitioner received the income from LEC and REC in the form of checks. Petitioner did not deposit the checks in his bank account, rather he cashed them and gave his employers their share of the checks in cash. For example, on December 21, 1984, petitioner received a check for $ 2,270 for services rendered by himself and Case & Company represented by an itemized bill. Petitioner cashed the check received from LEC and gave $ 625, half of the amount for real estate appraisals, in cash, to Case and Company. The remainder of the checks were cashed in a similar manner. Petitioner received these checks about every 4 to 6 weeks, and they were for substantial amounts. Petitioner never received a Form 1099 for the work performed for these entities for the 1983 and 1984 taxable years, and petitioner did not report any of this income on his Forms 1040. Petitioner did not record his related expenses (i.e., film and transportation expenses) in a log for deduction purposes for these jobs, and petitioners did not claim *229 such expenses on their 1983, 1984, or original 1985 income tax returns. For other jobs, he accumulated paid receipts in a drawer and then summarized them at the end of the year. However, he did not give the receipts to the tax preparer to determine his deductions; he just gave him the total amount. During the years 1983, 1984, and 1985, petitioner Nancy D. Worley was employed by GNB Batteries, Inc. She had no business expense deductions. During the 1983 tax year, she received taxable sick pay from The Travelers Insurance Company. The following charts represent all reported and unreported income of the petitioners during the relevant years: Year: 1983
Amount of Taxable
Source of Taxable Income
Income Received
Naval Finance Center
$  1,859.85
Disbursing Officer,
584.63
U.S.S. Truett
The Travelers Ins. Co.
31.43
GNB Batteries, Inc.
16,186.53
Gentry & Associates
5,239.25
Eames A. Powers, Jr.
1,535.00
LEC
4,660.00 $ 4,455 *
REC
15,360.00
Total
$ 45,456.69 ($ 41,001.69) Year: 1984
Naval Finance Center
$  2,041.26
Naval Support Activity
576.81
Case & Company (Form W-2)
3,140.00
Case & Company (Form 1099)
4,875.25
GNB Batteries, Inc.
11,818.42
Gentry & Associates
1,845.50
Eames A. Powers, Jr.
887.50
LEC
15,380.00 $ 7,010 *
REC
7,690.00
Sovran Bank
600.00
Total
$ 48,854.74 ($ 41,834.74) Year: 1985
Naval Support Activity
$    475.20
Case & Company (Form W-2)
6,187.50
Case & Company (Form 1099)
11,365.00
Naval Reserve Training
2,403.24
GNB Batteries, Inc.
12,206.98
Commonwealth of Virginia
3,870.00
Gentry & Associates
3,237.00
Eames A. Powers, Jr.
867.00
LEC
12,170.00 $ 5,048 *
Total
$ 52,781.92 ($ 47,733.92)
*230 Amount of Income Shown
Amount of Taxable
on Forms W-2/Forms 1099
Income Reported
Source of Taxable Income
Issued to Petitioners
on Form 1040
Naval Finance Center
$  1,859.85
$  1,859.85
Disbursing Officer,
584.63
584.63
U.S.S. Truett
The Travelers Ins. Co.
31.43
31.43
GNB Batteries, Inc.
16,186.53
16,186.53
Gentry & Associates
5.239.25
5,239.25
Eames A. Powers, Jr.
1,535.00
1,535.00
LEC
0    0    REC
0    0    Total
$ 25,436.69
$ 25,436.69
Naval Finance Center
$  2,041.26
$  2,041.26
Naval Support Activity
576.81
576.81
Case & Company (Form W-2)
3,140.00
3,140.00
Case & Company (Form 1099)
4,875.25
4,875.25
GNB Batteries, Inc.
11,818.42
11,818.42
Gentry & Associates
1,845.50
1,845.50
Eames A. Powers, Jr.
887.50
887.50
LEC
0    0   REC
0    0   Sovran Bank
0    0   Total
$ 25,184.74
$ 25,184.74
Naval Support Activity
$    475.20
$    475.20
Case & Company (Form W-2)
6,187.50
6,187.50
Case & Company (Form 1099)
11,365.00
11,365.00
Naval Reserve Training
2,403.24
2,403.24
GNB Batteries, Inc.
12,206.98
12,206.98
Commonwealth of Virginia
3,870.00
3,870.00
Gentry & Associates
3,237.00
3,237.00
Eames A. Powers, Jr.
867.00
867.00
LEC
[1] 12,170.00
[2]  0   Total
$ 52,781.92
$ 40,611.92
*231 Petitioner and his wife keep separate financial records and each pay their own bills. Petitioner, however, pays the monthly mortgage and his wife pays the monthly utility bills. Petitioner and his wife pay most of their bills in cash. Petitioner gathers the family records to bring to the tax preparer. Neither petitioner nor his wife read their income tax returns for 1983 or 1984 before they signed them. Petitioners' 1983 and 1984 income tax returns were selected for audit by the Internal Revenue Service because it had received an information report which matched up with petitioner's returns and indicated that petitioners had received income from LEC and REC which had not been reported on their Forms 1040 for 1983 and 1984. Specifically, the Form 1099 which listed petitioners' income was issued by a trustee in bankruptcy for LEC and REC, which were in a bankruptcy proceeding in 1986. During petitioners' audit, petitioners and/or their representatives provided evidence *232 from which respondent determined that petitioners were entitled to deduct as business expenses $ 7,322.90 for 1983 and $ 9,994.55 for 1984, which were not claimed on petitioners' returns. Of the additional business expenses which were determined, petitioners were entitled to deduct $ 4,455 in 1983 and $ 7,020 in 1984 for amounts which were paid to Gentry & Associates and Case & Company as those corporations' share of the fees paid for appraisals by LEC and REC. On the Form 1040X filed by petitioners on or about November 19, 1986, for the 1985 tax year, petitioners reported Schedule C expenses and reductions in the amount of $ 5,048.38 which were not reported on their original 1985 Form 1040. Of the additional Schedule C business expenses and deductions reported on the Form 1040X, $ 3,505 represents amounts paid to Case & Company as its share of fees paid by LEC for appraisals performed by petitioner. OPINION When respondent seeks to impose the addition to tax under section 6653(b), [2] he bears the burden of proving by clear and convincing evidence that petitioner has an underpayment, and that some part of this underpayment is due to fraud. Sec. 7454(a); [3] Rule 142(b); e.g. *233 , ; . *234 The issue of fraud poses a factual question which is to be decided on an examination of all the evidence in the record. , affg. a Memorandum Opinion of this Court; , affg. ; ; . Fraud is an actual intentional wrongdoing, and the intent required is the specific purpose to evade a tax believed to be owing. See , affg. A Memorandum Opinion of this Court; ; ; , affd. . This intent may be inferred from circumstantial evidence. ; , affd. ; *235 , affd. without published opinion , including the implausibility of the taxpayer's explanations. , affg. a Memorandum Opinion of this Court. The taxpayer's entire course of conduct may establish the fraudulent intent. . Where fraud is determined for each of several years, respondent's burden applies separately for each of the years. , affg. in part and revg. in part a Memorandum Opinion of this Court dated Feb. 24, 1954; , affd. sub nom. . A mere understatement of income does not establish fraud. However, a pattern of consistent underreporting of income for a number of years is strong evidence of fraud. , affg. a Memorandum Opinion of *236 this Court; . Fraud is not imputed from one spouse to another. In the case of a joint tax return, respondent must prove fraud as to each spouse charged with liability for the addition to tax. Section 6653(b) (which now appears as sec. 6653(b)(3)); , affd. ; . [4]
Respondent concedes that petitioner was very cooperative with the Internal Revenue Service auditor, Allen B. Stevens (Stevens), during the course of the audit, but petitioner's and Stevens' individual accounts of what transpired during the audit interviews varies widely. At trial, petitioner at first could not recall whether or not Stevens asked him why he failed to report the LEC and REC income during the 1983 and 1984 taxable years. Petitioner then testified "he asked me at the first meeting, I think," but later added that Stevens asked no such related questions *237 during the second interview. Petitioner also testified that Stevens did not take notes during the interview. Stevens, on the other hand, testified that he distinctly recalled asking petitioner why he did not report the income. Specifically, Stevens testified that petitioner told him he did not think he had to report the income because "Vernon Pledger (who is associated with LEC and/or REC) stated to him that "it's an expense to [the] company and [he didn't] have to worry about the tax." Stevens then testified that when he asked petitioner the same question a second time petitioner replied that "since [he] didn't get a 1099, [he] didn't think it could be traced." Stevens testified that he "had never in [his] 12 years of auditing heard such a statement and actually [his] jaw * * * dropped out." When Stevens pointed out to petitioner that the cancelled checks could show his receipt of the income, Stevens testified that petitioner replied "I didn't think about them getting audited." Stevens also testified that he took notes during the interview and elaborated that he "continually takes notes of comments and figures * * * [because] that's the only way that [he] can have *238 work papers which is required by [his] review staff." Petitioner argues that no evidence was presented which could possibly infer that petitioner intended to defraud the U.S. Government by underpaying his income tax. Petitioner contends that with his limited business background and lack of specific tax knowledge, it was logical for him to rely on the receipt of a W-2 Form or a Form 1099 from his employers and persons or companies for whom he worked to tell him what income he was required to report at the end of each year. Because petitioner did not receive a Form 1099 from LEC or REC, his failure to report this income was consistent with a person who unknowingly made a mistake and, when it was pointed out to him, tried to correct it. This is highlighted by petitioner's failure to report $ 600 of income from Sovran Bank in 1984 because no Form 1099 was received. Petitioner points out that he cooperated fully with Stevens, even to the extent of requesting letters from Gentry & Associates and Case & Company confirming his employment with those firms. Petitioner also turned over all his records that he maintained to Stevens so that Stevens could correct the returns. Petitioner *239 points out that this is not the action of someone who is attempting to defraud the same requestor of the information. Finally, petitioner denies having made the statements that are credited to him by the revenue agent Stevens while seated at his desk in an office at the Internal Revenue Service and contends that Stevens testified as he did because he wanted a fraud referral to the Criminal Investigations Division in order to help his chances of promotion. In short, petitioner concludes that his entire attitude and demeanor could hardly be described as that of a person whose intent was in any way evil and, while of limited education, would not have been so naive as to have admitted a fraud he did not commit to Stevens during the course of the audit. Respondent argues to the contrary. Respondent concludes that the evidence is overwhelming that petitioners' failure to properly report their income were attempts on their part to avoid the payment of tax on the omitted income. Respondent contends that petitioners figured that because they did not get a Form W-2 or Form 1099 for the income and because they did not leave any record of the receipt of the income in their bank account or *240 in an expense record, that the Internal Revenue Service could not trace the income to them and that they could get away with not reporting it. Respondent contends that the understatements of income in 1983 and 1984 were substantial and highlight a pattern which indicates that the omission of income was intentional rather than inadvertent in spite of petitioner's contention to the contrary. Respondent points out that petitioner received checks totalling almost $ 43,000 from LEC and REC during 1983 and 1984. During the 1983 year, however, petitioner reported income of approximately $ 6,800 from his real estate appraisal business with Gentry and Associates and his appraisal work for Eames A. Powers. On a monthly basis, his reported income totaled approximately $ 565. Respondent contends, therefore, that it is highly unlikely that petitioner never gave any thought to the checks received from LEC and REC, particularly since they totalled approximately $ 1,800 every 4 to 6 weeks. In 1984, his reported income from his real estate appraisal employment totaled approximately $ 10,000. His unreported income was approximately $ 16,000 , and this excludes the portion of LEC and REC income *241 he gave to his employers. We agree with respondent. While petitioner may only have a sixth grade education and limited knowledge of business or taxes, petitioner was savvy enough to work as a real estate appraiser and to complete appraisal forms, which require substantial addition and subtraction and could not have been competently completed by an "ignorant" person. Petitioner also was capable of keeping expense records and summarizing these records prior to giving them to his accountant. He operated in the business world on a daily basis. Of particular significance is the fact that the omitted income in question from performing appraisals was precisely the same kind of income petitioners were reporting from the Forms W-2 and 1099 payors, the only difference being that no Forms W-2 and 1099 were received from LEC or REC. Thus, it is highly unlikely petitioner did not know this was taxable income. Additionally, all of the income from the unreported source went undeposited in business accounts, and petitioner failed to keep any record of his expenses of producing those fees. When this practice is contrasted with petitioner's habit of keeping records of the expenses of his Forms *242 W-2 and 1099 income, it becomes apparent that the difference in treatment of the two kinds of expenses can most likely be explained in terms of an effort to conceal the receipt of income received from LEC and REC during the 1983 and 1984 tax years. While we agree that petitioner was cooperative once the Form 1099 was issued, this does not preclude a finding of fraud as of the time the returns were filed. Finally, we found petitioner's inconsistent testimony concerning his audit interviews with Stevens less credible than that of the audit agent Stevens, and do not find convincing petitioner's contention that Stevens testified falsely at trial to "get a fraud case," in hopes of a promotion. The record simply does not support such an accusation. For the foregoing reasons, we find that respondent has carried his burden of proving that the underpayments were due to fraud and that petitioner is liable for the additions to tax for fraud for the 1983 and 1984 tax years. We cannot, however, find that petitioner Nancy D. Worley is liable for the additions to tax for the 1983 and 1984 tax years. The mere signing of a return, which petitioners admittedly signed without reviewing, does *243 not itself rise to the level of clear and convincing evidence of fraud. It is not enough that respondent makes us suspicious of the taxpayer or even proves fraud by a preponderance of the evidence. See , affg. ; , affd. ; . "The conscious purpose to defraud proscribed by the statute does not include negligence, carelessness, misunderstanding or unintentional understatement of income." . The evidence must be clear and convincing. In the instant case, the evidence falls short of being clear and convincing. In this regard, the case is distinguishable from , which respondent cites as authority for the proposition that Nancy D. Worley is liable for fraud merely by signing the income tax returns with knowledge of her husband's employment by LEC and REC. In Mantone, however, it *244 was found that the taxpayer knew of his wife's lottery business income because he assisted her in that business, and he knew she derived income from that business because he made collections for her. His assertion that he thought she was only a housewife was found to be unbelievable on the record. Thus, when the taxpayer signed the return, he clearly knew of the omitted income. The same cannot be said of Mrs. Worley. Her husband worked for several persons, and respondent has not shown that she specifically knew that certain amounts of his income were omitted. They maintained separate accounts and check records. They each wrote their own bills. Respondent has not carried his burden of proof of fraud as to petitioner's wife. Decision will be entered under Rule 155.
Footnotes
1. All section references are to the Internal Revenue Code of 1954, as amended and in effect during the years in issue. All Rule references are to the Tax Court Rules of Practice and Procedure.↩
*. Indicates amount of cash paid to employers as their share of fees.↩
1. Form W-2 issued by Trustee for LEC in October 1986. ↩
2. Income from LEC was reported on Form 1040X filed on November 19, 1986. ↩
2. Section 6653(b) provides in relevant part as follows: SEC. 6653. FAILURE TO PAY TAX. * * * (b) Fraud. -- If any part of any underpayment (as defined in subsection (c)) of tax required to be shown on a return is due to fraud, there shall be added to the tax an amount equal to 50 percent of the underpayment. * * * In the case of a joint return under section 6013, this subsection shall not apply with respect to the tax of a spouse unless some part of the underpayment is due to the fraud of such spouse. [The subsequent amendments of this provision by sec. 325(a) of the Tax Equity and Fiscal Responsibility Act of 1982 (Pub. L. 97-248, 96 Stat. 324, 616) and by sec. 1503(a) of the Tax Reform Act of 1986 (Pub. L. 99-514, 100 Stat. 2085, 2742)) do not apply to the instant case.] ↩
3. SEC. 7454. BURDEN OF PROOF IN FRAUD, FOUNDATION MANAGER, AND TRANSFEREE CASES. (a) Fraud. -- In any proceeding involving the issue whether the petitioner has been guilty of fraud with intent to evade tax, the burden of proof in respect to such issue shall be upon the Secretary.↩
4. See ; .↩